# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN D. HUGHES,<br><br>                                  Plaintiff,<br>     vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br>                                 Defendant. | CASE NO. 09-CV-2815 - IEG (WMc)<br><br>ORDER:<br><br>(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 12]; and<br><br>(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 15]. |

Currently before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.

## BACKGROUND

Plaintiff is a 41-year-old male with at least a high school education. (Administrative Record ("AR") at 27.) Prior to the onset of the medical conditions that form the basis of his disability request, Plaintiff was a cabinet maker and a cook. (Id.) Plaintiff alleges that he became unable to work in 1999 and 2000 due to a work injury. (Id. at 70.) Plaintiff resumed working in 2001, but had to stop again in early September 2003, and has not worked since. (Id.) On July 25, 2005, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of

September 2, 2003. (Id. at 20.) The claim was denied initially on May 12, 2006, and upon reconsideration on January 10, 2007. (Id. at 32-36, 40-44.) Thereafter, Plaintiff filed a timely request for a hearing, which was held on August 23, 2007. (Id. at 20.) Plaintiff was represented by counsel at the hearing. (Id.) Mary E. Jesko, an impartial vocational expert, also appeared. (Id.)

The hearing was held before an Administrative Law Judge ("ALJ") Edward D. Steinman. In a written decision dated October 10, 2007, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act at any time from September 2, 2003 through the date last insured, June 30, 2007. (Id. at 28.) Specifically, the ALJ made the following pertinent findings:

> 2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 2, 2003 through his date last insured of June 30, 2007.
>
> . . . .
>
> 3.    Through the date last insured, the claimant had the following severe impairments: pain disorder; depressive disorder NOS.
>
> . . . .
>
> 4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work with a limit to sit or stand for six hours each in an eight-hour workday; the need to alternately sit or stand at will; occasional stooping, crouching, climbing stairs or ramps, crawling, kneeling, and balancing; avoid uneven terrain; avoid climbing ropes, ladders or scaffolds; avoid vibratory tools; frequent use of the hands for fingering, feeling, handling, gripping, and grasping; no work in a hazardous work environment; simple and repetitive tasks; limited public contact and limited co-worker contact.
>
> . . . .
>
> 6.    Through the date last insured, the claimant was unable to perform last relevant work.
>
> . . . .
>
> 9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10.   Through the date last insured, considering the claimant's age, education, work

experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.  The claimant was not under a disability as defined in the Social Security Act, at any time from September 2, 2003, the alleged onset date, through June 30, 2007, the date last insured.

(Id. at 22-28 (internal citations omitted).) Plaintiff subsequently requested a review of the hearing decision by the Appeals Council. The Appeals Council denied the request, making the ALJ's decision the final decision in this matter. (Id. at 4-6.) The Appeals Council noted that in reaching its decision, it also looked at the post-hearing medical records submitted by Plaintiff.[1] (Id. at 4.)

Plaintiff commenced this action on December 15, 2009, seeking judicial review pursuant to 42 U.S.C. § 405(g). [Doc. No. 1]. Plaintiff subsequently filed the present Motion for Summary Judgment, and Defendant filed a Cross-Motion for Summary Judgment. [Doc. Nos. 12, 15]. Plaintiff then filed an opposition / reply to Defendant's cross-motion. [Doc. No. 16, 17].

## LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, the claimant must show "inability to engage in any substantial gainful activity by reason of any medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary of the Social Security Administration established a five-step sequential evaluation for determining whether a person is disabled. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant as to steps one through four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). As to step five, the burden shifts to the Commissioner. Id. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Id.; 20 C.F.R. § 404.1520. The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

---

[1] The post-hearing records consist of medical records from Dr. Lise Wiltse dated January 28, 2008 and April 14, 2008, and an MRI dated July 7, 2008. (See AR at 7-15.)

> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett, 180 F.3d at 1098-99 (internal citations and footnotes omitted).

A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency. Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). At the same time, the Commissioner's denial of disability benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Id. at 1097. "Substantial evidence" is defined as "'more than a mere scintilla but less than a preponderance.'" Id. at 1098 (citation omitted). In determining whether there exists substantial evidence to support the ALJ's finding, the court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Id. "'If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.'" Id. (citation omitted).

**DISCUSSION**

**I.  Parties' arguments**

Plaintiff contends the ALJ's decision that Plaintiff is not under a disability as defined in the Social Security Act should be set aside because it is not supported by substantial evidence. Specifically, Plaintiff asserts the ALJ's decision fails to reflect that the ALJ understood that Plaintiff has been suffering from *two* different back injuries and that he had impairments in *both* of his knees. Plaintiff also contends the ALJ erred in not bifurcating the period of disability to account for different

degrees of functional impairment. Defendant responds that the ALJ properly considered all of the medical evidence in the record and that the ALJ's ultimate decision is supported by substantial evidence. Defendant also argues there is no factual or legal support for Plaintiff's contention that the disability period in this case should have been bifurcated.

## II.     Analysis

Plaintiff has failed to show that the ALJ's decision in this case is not supported by substantial evidence. As previously noted, the ALJ's denial of disability benefits may be set aside only if it is based on legal error or is not supported by substantial evidence *in the record as a whole*. Tackett, 180 F.3d at 1097. In determining whether there exists substantial evidence to support the ALJ's finding, the Court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Id. at 1098. Most importantly, if the evidence supports either outcome, "the court may not substitute its judgment for that of the ALJ." Id.; see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

In the present case, the ALJ properly followed the mandated five-step analysis. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 2, 2003 through his date last insured of June 30, 2007. (AR at 22.) At step two, the ALJ determined that through the date last insured, Plaintiff had the following severe impairments: pain disorder and depressive disorder NOS. (Id. at 22-23.) At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Id. at 23-24.) At step four, the ALJ found that through the date last insured, Plaintiff was unable to do any work that he has done in the past. (Id. at 26-27.) Finally, having considered Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 27-28.)

### A.     Evidence in the record of Plaintiff's back injuries

First, Plaintiff alleges the ALJ erred in failing to indicate that he considered both the long-

1 standing injury to Plaintiff's *thoracic* spine (mid back) from 1992[2] and the recent injury to Plaintiff's *lumbar* spine (low back) on April 21, 2007.[3] There is, however, little basis to this argument. In describing Plaintiff's back injury at step two, the ALJ initially notes that Plaintiff has had "back pain since a work-relating injury in 1992" and cites to Exhibit 17F among others. (Id. at 22.) Exhibit 17F refers to the medical records of Dr. Lise Wiltse and deals exclusively with Plaintiff's lumbar spine injury, and the MRI and facet injections that were subsequently performed. (See AR at 352-69.)

The ALJ then notes that Plaintiff has had three surgeries as well as steroid injections with respect to his back, including "MRI of the *lumbar* spine [that] showed mild stenosis at L2-3 and L3-[4] (Exhibit 18F/1)." (Id. at 22 (emphasis added).) Notably, Exhibit 18F/1 cited by the ALJ is the MRI that Plaintiff obtained as a result of his April 21, 2007 lumbar spine injury, (see id. at 370), and is the exact exhibit cited by Plaintiff himself in support of his contention that the ALJ did not consider the injury to his lumbar spine. (See Pl. Mem. of P. & A. in support of MSJ, at 3 [Doc. No. 12-1].)

In light of these references in the ALJ's decision, substantial evidence supports the conclusion that the ALJ considered both the injury to Plaintiff's thoracic spine and to his lumbar spine.

B.   Evidence in the record of Plaintiff's knee injuries

Second, Plaintiff alleges the ALJ erred in failing to indicate that he considered both the long-standing injury to Plaintiff's *right* knee[4] as well as the recent complications with Plaintiff's *left* knee.[5] Once again, there is little basis to this argument. Although the ALJ expressly lists only the pain in

---

[2] As documented by Plaintiff's treating physician, Dr. Michael Moon, Plaintiff has a history of ongoing thoracic spine pain secondary to degenerative disc disease with myofascial component. (See, e.g., AR at 235-305, 318, 321, 325, 334, 336, 345.)

[3] Plaintiff suffered the injury to his low back on April 21, 2007, when he bent over to pick up a pen. (AR at 359.) Plaintiff subsequently underwent an MRI of his lumbar spine, which revealed mild central stenosis (constricting of the space surrounding the central nerve) around L2-3 and L3-4, in addition to facet arthropathy (arthritis in the joints that connect the posterior elements of the vertebral bodies to one another) at L4-5 and L5-S1 levels. (Id. at 370.) On July 2, 2007, Plaintiff also underwent facet steroid injections to the left side of the lumber spine. (Id. at 354.)

[4] Plaintiff has a history of right knee pain, and he has undergone several arthroscopic surgeries for repair of a right knee ACL tear and lateral meniscus tear. (See, e.g., AR at 158, 199-204, 235-305.)

[5] Plaintiff asserts the complications with his left knee began at about the same time when Dr. Moon noted Plaintiff's complaint of left knee pain on May 2, 2006. (See AR at 249.) On December 15, 2006, an MRI of Plaintiff's left knee revealed a complex tear involving the body and posterior horn of the medial meniscus with horizontal and oblique components. (Id. at 371.) Plaintiff underwent left knee arthroscopic surgery and partial medial meniscectomy on March 28, 2007. (Id. at 385.)

1  Plaintiff's "right" knee under step two, the ALJ cites Exhibits 20F and 22F when discussing the
2  surgeries that Plaintiff underwent on his knees. Exhibit 20F includes, *inter alia*, the post-operative
3  report on Plaintiff's left knee arthroscopy and partial medial meniscectomy performed by Dr. Christian
4  Bentley on March 28, 2007, as well as the follow-up examinations by Dr. David Amory (April 6,
5  2007) and Dr. Bentley (June 14, 2007) that specifically reference those surgeries. (See AR at 382, 384-
6  86.) Similarly, the arthroscopic surgery on Plaintiff's left knee is discussed in Plaintiff's treating
7  physician's progress note for May 1, 2007, (see id. at 334)–which is yet another medical record that
8  the ALJ relied upon in rendering his decision. (See id. at 22 (citing Exhibit 16F).)
9  In light of these references in the ALJ's decision, substantial evidence supports the conclusion
10  that the ALJ considered both Plaintiff's right knee and left knee injuries.

11  C.  ALJ's finding at step three

12  Substantial evidence supports the ALJ's finding at step three that Plaintiff did not have an
13  impairment or combination of impairments that met or medically equaled one of the listed
14  impairments. As the ALJ noted, no physician has opined that Plaintiff's condition meets or equals any
15  listing, and the state agency program physicians specifically opined that it does not. (See AR at 23.)
16  None of the evidence submitted by Plaintiff after the hearing included such an opinion either. (See
17  generally id. at 8-15.) Thus, the ALJ's finding at step three is supported by substantial evidence. See
18  Tackett, 180 F.3d at 1098 ("The burden of proof is on the claimant as to steps one to four.").

19  D.  ALJ's determination of Plaintiff's non-eligibility for benefits

20  Similarly, substantial evidence supports the ALJ's determination with respect to Plaintiff's
21  residual functional capacity as well as his ultimate conclusion that Plaintiff was not eligible for social
22  security benefits. In light of the objective evidence presented, the ALJ found Plaintiff's statements
23  concerning the intensity, persistence, and limiting effects of his disabling conditions to be not entirely
24  credible. (AR at 24.) For example, relying on medical records from May 2006 to November 2007, the
25  ALJ noted that while the exams showed tenderness in the affected areas, they did not reveal other
26  significantly abnormal clinical findings. (Id.) The ALJ also noted that despite Plaintiff's back
27  problems, Plaintiff had a normal gait and did not require any assistive devices to walk or any other
28  "special accommodations." (Id. at 24-25.) As Defendant points out, the ALJ could properly consider
these factors in assessing Plaintiff's credibility. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.

1991) (en banc) (noting that the adjudicator must consider such factors as "[f]unctional restrictions" and "[t]reatment, other than medication, for relief of pain" in determining the credibility of the claimant's allegations of disabling pain (quoting Social Security Ruling ("SSR") 88-13)). The ALJ also properly noted that Plaintiff has not generally received the type of medical treatment one would expect for a totally disabled individual. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

There also was no error in ALJ's rejection of Dr. Moon's opinion on the residual functional capacity because that opinion was inconsistent with Dr. Moon's own examination of Plaintiff. (See AR at 24.) Over several years that Dr. Moon has been Plaintiff's treating physician, he has generally indicated that Plaintiff's pain was at a "tolerable" or "manageable" level as long as Plaintiff was taking the prescribed medications and he never mentioned any significant restrictions in the range of motion for Plaintiff's spine or any extremity. (See generally id. at 235-305, 318-19, 321-25, 334-37, 341-42, 345-48.) Nonetheless, in his assessment of Plaintiff immediately prior to the administrative hearing, Dr. Moon assessed a quite limited physical functional capacity for Plaintiff. (See id. at 458-62.) In that assessment, Dr. Moon indicated that Plaintiff could only sit for 45 minutes at a time and about 4 hours total in an 8-hour workday; could only stand for 45 minutes at a time and about 2 hours total; must be allowed to alternatively sit or stand at will; need to take unscheduled breaks for 5-10 minutes every 1-2 hours during an 8-hour workday; can frequently lift or carry less than 10 pounds and can occasionally lift or carry 20 pounds; can occasionally hold his head in a static position; could rarely stoop or climb stairs; could never crouch / squat or climb ladders; could use his hands for gross manipulation and his fingers for fine manipulation only 50% of the time during an 8-hour workday; and could reach with his arms (including overhead) only 25% of the time. (Id.) Although the ALJ adopted some of Dr. Moon's limitations when determining Plaintiff's residual functional capacity, the ALJ properly gave less weight to those assessments which were inconsistent with Dr. Moon's own prior evaluations of Plaintiff. See Saelee v. Charter, 94 F.3d 520, 522-23 (9th Cir. 1996) (concluding that the ALJ could properly discount the treating physician's report where it was obtained solely for the purposes of the administrative hearing, varied from the treating physician's own treatment notes, and was worded ambiguously in an apparent attempt to assist the claimant in obtaining social security benefits); 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record

as a whole, the more weight we will give to that opinion.").

Finally, the ALJ properly considered the fact that Plaintiff's medications have been relatively effective in controlling his symptoms and that there were no remaining side effects alleged as a result of their use. See Bunnell, 947 F.2d at 346 (noting that the "[t]ype, dosage, effectiveness, and adverse side-effects of any pain medication" is one factor that the adjudicator must consider in determining the claimant's credibility (quoting SSR 88-13)). As the ALJ noted, Dr. Moon himself indicated that the medications were effective in keeping Plaintiff's pain "at a manageable level" and allowed Plaintiff to perform "his normal activities of daily living." (See, e.g., AR at 318, 321, 325.) Dr. Moon also indicated that Plaintiff's problems with constipation were effectively controlled with Colace, his daytime sedation was controlled with use of the Provigil, and his heartburn was controlled with Zantac. (See, e.g., AR at 318.) Accordingly, substantial evidence in the record supports the ALJ's finding that Plaintiff's impairments were not disabling. See Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." (citations omitted)); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

### E.  No basis for bifurcation of the disability period

There is also little basis to Plaintiff's argument that the ALJ should have bifurcated the disability period to account for different levels of functional impairment.[6] As Defendant correctly notes, Plaintiff cites no authority for the proposition that, unless the claimant files a separate new application for social security benefits, the ALJ is required to bifurcate the disability period to account for each injury during the relevant disability period. Rather, as Plaintiff himself concedes, the ALJ must consider the combined impact of all the impairments throughout the disability determination period. See Vazquez v. Astrue, 572 F.3d 586, 596-97 (9th Cir. 2009); 20 C.F.R. § 404.1523 (noting that where a claimant has a medically severe combination of impairments, "the combined impact of

---

[6] According to Plaintiff, the ALJ should have considered separately the following three disability periods: (1) from September 2, 2003 until May 2, 2006, when Plaintiff only had major problems with his thoracic spine and right knee; (2) from May 3, 2006 until April 20, 2007, when Plaintiff also started to experience problems with his left knee; and (3) from April 21, 2007 until the present, when Plaintiff also started to experience problems with his lumbar spine.

1  the impairments will be considered throughout the disability determination process"); id. § 404.1545
2  (noting that where a claimant has more than one impairment, the adjudicator will consider all of them,
3  even those that are not severe, in determining the claimant's residual functioning capacity).
4  Accordingly, because in the present case the ALJ did consider the combined effect of all of Plaintiff's
5  impairments, the ALJ did not err in not bifurcating the disability determination period.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ considered all of Plaintiff's relevant impairments and that the ALJ's ultimate determination that Plaintiff is not eligible for social security benefits is supported by substantial evidence. Accordingly, the Court **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**DATED:  August 24, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**